IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PHILIP MORRIS USA,

    Plaintiff,

  v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

    Defendants.

_____/

No. C 08-04482 CW

ORDER DENYING PRELIMINARY INJUNCTION

Plaintiff moves for a preliminary injunction enjoining Defendants from enforcing City Ordinance No. 194-08 (Ordinance). Defendants oppose the motion. The motion was heard on November 6, 2008. Having considered all of the papers filed by the parties and oral argument on the motion, the Court DENIES Plaintiff's motion for a preliminary injunction.

BACKGROUND

Plaintiff Phillip Morris USA is a Virginia corporation that manufactures cigarettes that are marketed and sold in San Francisco. Defendants are City and County of San Francisco, Board of Supervisors of the City and County of San Francisco and Gavin Newsom, Mayor of the City and County of San Francisco. On August 5, 2008, the Board of Supervisors passed and, on August 7, 2008,

the Mayor signed and approved Ordinance 194-08.  The Ordinance prohibits the sale of tobacco products in stores containing pharmacies except for general grocery stores and "big box" stores.

In the Ordinance, the Board made several findings describing the need for the law.  The Board found, "Through the sale of tobacco products, pharmacies convey tacit approval of the purchase and use of tobacco products.  This approval sends a mixed message to consumers who generally patronize pharmacies for health care services."  San Francisco Ordinance No. 194-08 § 1(7).  The Board also cited a 2003 study that found that eighty-four percent of San Francisco pharmacies selling cigarettes displayed tobacco advertising.  Id.

On September 24, 2008, Plaintiff sought an emergency temporary restraining order to prevent the ordinance from going into effect as scheduled on October 1, 2008.  The Court denied the application.  The Court ordered Defendants to show cause why a preliminary injunction should not issue.  The law went into effect on October 1, 2008.

## LEGAL STANDARD

To obtain a preliminary injunction, the moving party must establish either: (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in the moving party's favor.  Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).

The test is a "'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'"  Id. (quoting San Diego Comm. Against

2

1 Registration & the Draft v. Governing Bd. of Grossmont Union High
2 Sch. Dist., 790 F.2d 1471, 1473 n.3 (9th Cir. 1986)).  The moving
3 party ordinarily must show "a significant threat of irreparable
4 injury," although there is "a sliding scale in which the required
5 degree of irreparable harm increases as the probability of success
6 decreases," United States v. Odessa Union Warehouse Co-op, 833 F.2d
7 172, 174, 175 (9th Cir. 1987), and vice versa.  To overcome a weak
8 showing of merit, a plaintiff seeking a preliminary injunction must
9 make a very strong showing that the balance of hardships is in its
10 favor.  Rodeo Collection, 812 F.2d at 1217.

DISCUSSION

I.   Probability of Success on the Merits

Philip Morris argues that there is a sufficient likelihood that it will succeed on the merits of its First Amendment and federal preemption claims to support the grant of a preliminary injunction.

A.   First Amendment

Philip Morris argues that the Ordinance unconstitutionally restricts its "protected interest in communicating information about its products."  See Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 571 (2001).  Philip Morris asserts that removing products from pharmacies suppresses its speech because the product itself is a form of advertisement.  Philip Morris also argues that the Ordinance has the practical effect of removing all point of sale advertising because stores affected by the Ordinance participated in Philip Morris's "Retail Leaders" program, which provides retailers with advertising and promotional materials.  Once the Ordinance went into effect, Philip Morris terminated the Retail

3

Leaders agreements with all affected stores. Paoli Supplemental Dec. ¶ 4.

Nothing in the Ordinance restricts Philip Morris's ability to advertise its products in pharmacies. Rather, the Ordinance states, "No person shall sell tobacco products in a pharmacy except [in grocery stores or big box stores]." As Defendants point out, the ordinance would not prevent Philip Morris from continuing to pay Walgreens and Rite Aid to display actual Philip Morris products in prominent parts of the store. Therefore, the Ordinance prohibits conduct, tobacco sales, not speech about tobacco.

The Supreme Court has "extended First Amendment protection only to conduct that is inherently expressive." Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547 U.S. 47, 66 (2006) (FAIR) (explaining that in Texas v. Johnson, 491 U.S. 397, 406 (1989), the Court "held that burning the American flag was sufficiently expressive to warrant First Amendment protection."). However, the Court has "rejected the view that conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea." Id. at 65-66 (internal quotation and citation omitted).

To determine whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, the Supreme Court asks whether "'[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" Texas v. Johnson, 491 U.S. at 404 (quoting Spence v. Washington, 418 U.S. 405, 410-411 (1974)). To give some examples, the Supreme Court has

4

>recognized the expressive nature of students' wearing of black armbands to protest American military involvement in Vietnam, <u>Tinker v. Des Moines Independent Community School Dist.</u>, 393 U.S. 503, 505 (1969); of a sit-in by blacks in a "whites only" area to protest segregation, <u>Brown v. Louisiana</u>, 383 U.S. 131, 141-142 (1966); of the wearing of American military uniforms in a dramatic presentation criticizing American involvement in Vietnam, <u>Schacht v. United States</u>, 398 U.S. 58 (1970); and of picketing about a wide variety of causes, see, e.g., <u>Food Employees v. Logan Valley Plaza, Inc.</u>, 391 U.S. 308, 313-314 (1968); <u>United States v. Grace</u>, 461 U.S. 171, 176 (1983).

Here, there is nothing inherently expressive about selling tobacco products in pharmacies that would warrant First Amendment protection. Rather, the expression implicated is the speech accompanying the Ordinance, not the conduct prohibited. <u>See</u> <u>FAIR</u>, 547 U.S. at 66. For instance, the Ordinance states one purpose of the law is to counter the "mixed message" that might arise from selling tobacco in stores that are known for selling health care products. The term "mixed message" here is used colloquially to mean that allowing the continued sale of tobacco products alongside health care products in pharmacies might create confusion among consumers. The fact that Philip Morris relies so heavily on this explanatory colloquialism in the Ordinance "is strong evidence that the conduct at issue here is not so inherently expressive that it warrants protection under" the First Amendment. <u>Id.</u>

Phillip Morris also asserts that the Ordinance is unconstitutional because it was passed based on an "improper censorial motive," namely Defendants' "antipathy to the advertising that accompanies the offering of tobacco for sale." Application for TRO at 11 and 9. The Court disagrees. As noted above, the Ordinance regulates tobacco sales, not advertising. The record

contains no evidence of an ulterior legislative motive.  While Defendants expressed displeasure about the health effects of smoking and the need to ban tobacco sales at pharmacies, they did not imply that their true intent with the Ordinance was to limit advertising in any way.  In any event, the court may "not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." United States v. O'Brien, 391 U.S. 367, 383 (1968).

Philip Morris also argues that the Ordinance is subject to First Amendment scrutiny because it is "based on a nonexpressive activity [that] has the inevitable effect of singling out those engaged in expressive activity." Arcara v. Cloud Books, Inc., 478 U.S. 697, 706-07 (1986). See Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue, 460 U.S. 575, 592-93 (1983) (holding that First Amendment scrutiny applied to a special use tax on large quantities of newsprint and ink because the tax imposed a disproportionate and inevitable burden on a small number of newspapers exercising their constitutional protected freedom of the press).  Philip Morris asserts that the Ordinance "singled out" its advertising because after the Ordinance went into effect Philip Morris withdrew all of its advertising in pharmacies.  However, nothing in the Ordinance prohibited Philip Morris from continuing to advertise in pharmacies.  Philip Morris made a voluntary business decision to remove its advertising from a location that no longer sold its product.  This decision was not forced upon Philip Morris by Defendants' actions.  For the foregoing reasons, Philip Morris's First Amendment claim is not likely to succeed on the merits.

B.  Federal Preemption

The Federal Cigarette Labeling and Advertising Act (FCLAA) preempts state and local laws "with respect to the advertising or promotion of any cigarettes." 15 U.S.C. § 1334. Philip Morris argues that the FCLAA preempts the Ordinance because the Ordinance's intended effect is to remove tobacco advertising and promotion in pharmacies. As noted above, the Ordinance does not regulate advertising, it only regulates sales. Because the FCLAA does not regulate tobacco sales, Philip Morris's preemption claim is not likely to succeed on the merits. See Lorillard, 533 U.S. at 550, 552 ("We hold only that the FCLAA pre-empts state regulations targeting cigarette advertising. States remain free to enact generally applicable zoning regulations, and to regulate conduct with respect to cigarette use and sales").

II. Likelihood of Irreparable Injury

Philip Morris argues that it has demonstrated a likelihood of irreparable injury because the Ordinance threatens its First Amendment rights and important channels of business and communication. As noted above, the Ordinance does not infringe on Philip Morris's First Amendment rights in any way. Although Philip Morris might suffer economic losses as a result of not being able to sell tobacco products in pharmacies, "[t]he severity of this burden is dubious at best, and is mitigated by the fact that [it] remain[s] free to sell the same material at another location." Arcada v. Cloud Books, Inc., 478 U.S. 697, 705 (1986). The Court finds that Philip Morris is not likely to suffer an irreparable injury.

CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for a preliminary injunction (Docket No. 6).

IT IS SO ORDERED.

Dated: 12/5/08

*Claudia Wilken*

CLAUDIA WILKEN
United States District Judge